1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a California non-profit association,<br><br>        Plaintiff,<br><br>   v.<br><br>NALCO COMPANY LLC, a Delaware limited liability company,<br><br>        Defendant. | Case No.: 2:23-cv-05387<br><br>**CONSENT DECREE (DKT. 12)**<br><br>**JS-6** |

**CONSENT DECREE**

**WHEREAS,** Plaintiff Los Angeles Waterkeeper ("LA Waterkeeper" or "Plaintiff") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Los Angeles, California;

**WHEREAS,** LA Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS**, Nalco Company LLC ("Nalco" or "Defendant") owns and operates a facility at 2111 E. Dominguez Street, Carson, California 90810 ("Facility").

**WHEREAS**, the Facility is a specialty chemical manufacturing facility and industrial activities consist of production of chemicals (demulsifiers, scale/corrosion inhibitors, and water treatment chemicals), loading and unloading activities, wastewater treatment, raw and finished material storage, equipment maintenance, operational equipment movement, and shipping and receiving. The Facility is categorized under Standard Industrial Classification ("SIC") Codes 2869 and 2899, covering certain facilities engaged in industrial organic chemicals and chemical preparations.

**WHEREAS**, storm water discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 97-03-DWQ, and as amended by Water Quality Orders Nos. 2015-0057-DWQ and 2015-0122-DWQ ("General Permit" or "Permit"), and the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, Defendant's operations at the Facility result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, the General Permit requires all permittees, including Defendant, to comply with, inter alia, the following mandates: (1) develop and implement a storm water pollution prevention plan ("SWPPP") and a storm water monitoring implementation plan ("MIP"), (2) control pollutant discharges using, as applicable, best available technology economically achievable ("BAT") or best conventional pollutant control technology ("BCT") to prevent or reduce pollutants through the development and application of Best Management Practices ("BMPs"), which must be included and timely updated in the SWPPP, (3) reduce and eliminate discharges necessary to comply with any and all applicable Water Quality Standards ("WQS"), and (4) implement a monitoring and reporting program designed to assess compliance with the Permit;

**WHEREAS**, on January 31, 2023, Plaintiff issued a notice of intent to file suit ("60-Day Notice") to Defendant, its registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Officer of the Los Angeles Regional Water Quality Control Board ("Regional Board"), and the Regional Administrator of EPA Region IX, alleging violations of the Clean Water Act and the General Permit Water Quality Order 2014-0057-DWQ, as amended by Order No. 2015-0122-DWQ and Order 2018-0028-DWQ incorporating: 1) Federal Sufficiently Sensitive Test Method Ruling; 2) TMDL Implementation Requirements; and 3) Statewide Compliance Options Incentivizing On-Site or Regional Storm Water Capture and Use, at the Facility;

**WHEREAS**, on July 6, 2023, LA Waterkeeper filed a complaint against Nalco Company LLC in the Central District of California, Civil Case No. 2:23-cv-05387 ("Complaint");

**WHEREAS**, Plaintiff's Complaint alleged violations of the General Permit and the Clean Water Act for Defendant's discharges of pollutants into storm drains

and surface waters, including the Dominguez Channel Estuary (Receiving Water) which flows to the Los Angeles Harbor;

**WHEREAS**, Plaintiff and Defendant (collectively "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice and Complaint without further proceedings;

**WHEREAS**, all actions taken by the Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local rules and regulations.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.     The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A);

2.     Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District;

3.     The Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365;

4.     LA Waterkeeper has standing to bring this action;

5.     The Court shall retain jurisdiction over this action for purposes of interpreting, modifying, or enforcing the terms of this Consent Decree, or as long thereafter as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the Term of this Consent Decree.

I. **OBJECTIVES**

6.     It is the express purpose of the Setting Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by LA Waterkeeper in its 60-Day Notice and Complaint. These objectives

include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

7.    In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facility.

## II. AGENCY REVIEW AND CONSENT DECREE TERM

### A. AGENCY REVIEW OF CONSENT DECREE

8.    <u>Agency Review</u>. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the EPA (the "Federal Agencies"), within three (3) business days of the final signature of the Parties, for agency review consistent with 40 C.F.R. § 135.5. The agency review period ("Agency Review Period") expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, copies of which shall be provided to Defendant. In the event that the Federal Agencies object to entry of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies. If the Parties are unable to resolve any issue(s) raised by the Federal Agencies in their comments, the Parties agree to expeditiously seek a settlement conference with the assigned Magistrate Judge to resolve any issue(s).

9.    <u>Court Notice</u>. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order coordinate the Court's calendar with the 45-day review period.

10.   <u>Entry of Consent Decree</u>. Following expiration of the Federal Agencies' 45-day review period, Plaintiff shall submit the Consent Decree to the Court for entry.

### B. DEFINITIONS

11.   Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under

the CWA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, the following definitions apply:

      a. "BAT" means the Best Available Technology Economically Achievable.

      b. "BCT" means the Best Conventional Treatment Technology.

      c. "BMPs" means Best Management Practices.

      d. "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

      e. "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

      f. "Design Storm" means the volume and flow rate of runoff produced from an 85th percentile, 24-hour storm event as defined in General Permit Section X.H.6: Design Storm Standards for Treatment Control BMPs.

      g. "Discharge Point" means each outfall and discharge location designated in the then-current SWPPP for the Facility.

      h. "Effective Date" means the effective date of this Consent Decree, which shall be the date of expiration of the Agency Review Period.

      i. "MIP" means a Monitoring Implementation Plan.

      j. "PPT" means Pollution Prevention Team.

      k. "Qualifying Storm Event" or "QSE" shall have the definition set forth in the General Permit.

      l. "Reporting Year" means the period from July 1 of a given year to June 30 of the following year.

      m. "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System.

n.  "SWPPP" means a Storm Water Pollution Prevention Plan.

o.  "Term" means the period between the Effective Date and the "Termination Date."

p.  "Termination Date" means the latest of:

    i.  June 30 following five (5) years from the Effective Date;

    ii.  seven (7) calendar days from the conclusion of any proceeding or process to enforce the Consent Decree initiated prior to June 30 following five (5) years after the Effective Date; or

    iii.  seven (7) calendar days from Defendant's completion of all payments and other affirmative duties required by this Consent Decree.

q.  "Wet Season" means the seven-month period beginning October 1st of any given year and ending April 30th of the following year.

## III. COMMITMENTS OF THE SETTLING PARTIES

### A. STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES

12.  <u>Non-Storm Water Discharge Prohibition</u>: Any unauthorized non-storm water discharge, as defined in the General Permit, shall be a violation of this Consent Decree.

13.  <u>Current and Additional Best Management Practices</u>: In addition to maintaining the current BMPs described in the Facility's SWPPP, Defendant shall (1) develop and implement BMPs identified herein, and (2) develop and implement additional BMPs necessary to comply with the provisions of this Consent Decree and the Storm Water Permit, including but not limited to those that achieve BAT/BCT. In addition, the General Permit Receiving Water Limitations require that discharges from the Facility "not cause or contribute to an exceedance of any applicable water quality standards contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan." Defendant shall develop and implement BMPs necessary to comply with the General Permit requirement to achieve

compliance with BAT/BCT standards, to comply with the applicable water quality standards as described in the General Permit, and to prevent or reduce contamination in storm water discharges from the Facility in compliance with this Consent Decree.

14.  Rain Gauge/Sensor. Defendant shall install an electronic rain gauge or sensor at the Facility on or before the Effective Date. The rain gauge/sensor shall be capable of measuring precipitation down to at least 0.1 inches, and record start/stop times for all rain events. During the Term, Defendant shall collect rainfall data using the gauge/sensor for all precipitation events to the nearest 0.1 inch, including start/stop times. Data from the rain gauge/sensor shall be conclusive of precipitation quantities and timing for purposes of this Consent Decree. In the event Defendant's gauge/sensor malfunctions, the Los Angeles County Department of Public Works Rain Gauge 1113 (Dominguez Water Company, 33.831667, -118.225278) will be used to establish precipitation quantities and timing for the purposes of this Consent Decree.

15.  Hydrologic Evaluation: Within thirty (30) days of the Effective Date, Defendant shall submit a written plan ("Hydrological Evaluation") to LA Waterkeeper providing a full assessment of Facility drainage and storm water flow (including surface/sheet flow) and establishing the volume- and flow-based criteria for the Design Storm as defined in General Permit Section X.H.6: Design Storm Standards for Treatment Control BMPs.

16.   LA Waterkeeper shall provide Defendant with a written response ("Recommendations") if any, to the Hydrologic Evaluation within fourteen (14) calendar days of its receipt of the complete Hydrological Evaluation. Defendant shall incorporate LA Waterkeeper's Recommendations into the Hydrological Evaluation or, alternatively, provide a separate written rationale explaining why any of the Recommendations were not accepted or incorporated, and provide a Final Hydrological Evaluation to LA Waterkeeper within thirty (30) calendar days of receipt of any Recommendations.

17. Required BMP s for the Facility:

    a.  Within forty-five (45) days of the Effective Date, Defendant shall also develop and implement the following BMPs at the Facility:

        i.  During the Wet Season, implement a sweeping program using a PM-10 compliant street sweeper on all paved areas at least once per month, and employ hand sweeping in areas a mechanical sweeper cannot access;

    b.  Annually by September 15th, employ and secure new filter socks around all drain inlets unless an advanced treatment system is installed and operational or the Facility has fulfilled the On-Site Compliance Option as specified in Attachment I of the General Permit;

    c.  During the Wet Season, as necessary, replace the filtration socks at the drain inlets when degraded or ineffective until the advanced treatment system is installed and operational or the Facility has fulfilled the On-Site Compliance Option as specified in Attachment I of the General Permit; and

    d.  Institute a formal pre-rain protocol throughout the Wet Season to be implemented prior to forecasted rain events with a greater than 50% probability of precipitation above 0.1 inches as forecasted by the National Oceanic and Atmospheric Administration at https://www.weather.gov for "Elftman". The pre-rain protocol will include inspection of any filter socks deployed at the site and as practicable removal of exposed waste material and relocation of uncontained debris bins and trash cans under cover.

**B.  SAMPLING AT THE FACILITY**

18.  Defendant shall develop a monitoring program consistent with the General Permit. During the Term, Defendant shall collect samples of storm water

discharge from each Discharge Point. Defendant shall collect storm water samples from each Discharge Point from at least four (4) Qualifying Storm Events as required by the Industrial General Permit (i.e., two Qualifying Storm Events during the first half of the reporting year and two Qualifying Storm Events during the second half of the reporting year. As required by the General Permit, such sampling shall take place as soon as possible within the four (4) hour period during regular business hours and when safe. Any failure to collect samples as required by this Consent Decree, including as a result of insufficient discharge, shall be documented, including by taking photographs, and submitted to LA Waterkeeper by email, along with rain gauge/sensor data for the data when the sample should have been collected but was not, within ten (10) days of a written request for such records by LA Waterkeeper or such records being reported in the Defendant's Annual Report submitted pursuant to the General Permit, whichever is earlier. In the event Defendant pursues the On-Site Compliance Option under Attachment I of the General Permit, Defendant shall comply with the applicable monitoring and reporting requirements.

19.   <u>Sampling Parameters</u>: All samples collected pursuant to this Consent Decree shall be analyzed, at minimum, for the parameters listed in Table 1.

20.   <u>Laboratory and Holding Time</u>. Except for pH samples, delivery of all samples to a California state certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite using a calibrated portable instrument for pH in accordance with the manufacturer's instructions.

21.   <u>Detection Limit</u>: Defendant shall request that the laboratory use analytical methods adequate to detect the individual contaminants at or below the values specified in the General Permit and Table 1 below.

22.   <u>Reporting</u>: Defendant shall provide complete laboratory results of all samples collected at the Facility to SMARTS in accordance with the General Permit,

and shall provide copies to LA Waterkeeper within five (5) days of receiving the laboratory report with the results.

### C. REDUCTION OF POLLUTANTS IN DISCHARGES

23.   Table 1 Numeric Limits: Defendant shall develop and implement BMPs to reduce pollutants in storm water at the Facility to levels below those in Table 1.

**TABLE 1**

| Analytes | Values | Source of Limit |
|----------|--------|-----------------|
| Total Suspended Solids (TSS) | 400 mg/L<br>100 mg/L | Instantaneous NAL<br>Annual NAL |
| Oil & Grease (O&G) | 25 mg/L<br>15 mg/L | Instantaneous NAL<br>Annual NAL |
| Zinc | 0.26 mg/L | Annual NAL |
| Copper | 0.0332 mg/L | Annual NAL |
| pH | 6-9 s.u. | Instantaneous NAL |

24.   Table 1 Exceedances. Under this Consent Decree, an "Exceedance" of Table 1 is defined as follows: an exceedance ("Exceedance") occurs when two (2) or more analytical results from samples taken for any single parameter within a reporting year, regardless of the date of the sample or the discharge point, exceeds the applicable Table 1 Standard.[1]

25.   Action Plans: As of the Effective Date, and for the remainder of the Term, if (i) Defendant discharges non-stormwater from a Discharge Point in violation of paragraph 12, or (ii) storm water samples collected from Qualifying Storm Events demonstrate an Exceedance of the Table 1 parameters as defined above, or (iii) if Defendant pursues the On-Site Compliance Option under Attachment I of the General Permit and the system necessary to fulfill the On-Site Compliance Option is

---

[1] As examples: (i) samples from both Sample Point 1 and Sample Point 2 exceeding the 0.26 mg/L standard for zinc on December 28, 2023; (ii) samples from Sample Point 1 exceeding the 0.26 mg/L standard for zinc on December 28, 2023 and on March 15, 2024; or (iii) samples from Sample Point 1 exceeding the 0.26 mg/L standard for zinc on December 28, 2023, and samples from Sample Point 2 exceeding the 0.26 mg/L standard for zinc on March 15, 2024.

operational, there is a discharge of storm water from a storm event smaller than the Design Storm, Defendant shall prepare and submit to LA Waterkeeper a plan for reducing and/or eliminating the discharge of pollutants, the discharge of non-stormwater, and/or the discharge of storm water from a storm event smaller than the Design Storm, as applicable ("Action Plan") for the Facility.

    a.  <u>Action Plan Requirements</u>.

        i.  Each Action Plan submitted based on an Exceedance of the Table 1 shall include at a minimum: (1) the identification of the contaminant(s) discharged in excess of the Table 1 level(s); (2) an assessment of the source of each contaminant exceedance; (3) the identification of additional BMPs that shall be implemented to achieve compliance with the numeric limit(s), as well as the design plans and calculations of these additional BMPs; (4) time schedules for implementation of the proposed BMPs.

        ii.  Each Action Plan submitted based on the discharge of non-stormwater or the discharge of storm water from a storm event smaller than the Design Storm, as applicable, shall include at a minimum: (1) a description of the discharge, including without limitation, the date and time, location, approximate volume; (2) an assessment of the cause(s) (e.g., failure of structural BMP, staff error); (3) the identification of additional BMPs that shall be implemented to achieve compliance with this Consent Decree, as well as the design plans and calculations of these additional BMPs; and (4) a time schedules for implementation of the proposed BMPs.

    b.  The time schedule(s) for implementation shall ensure that all BMPs (with the exception of advanced treatment of storm water consistent with

the Design Storm standards from the General Permit (Section X.H.6)) are implemented as soon as possible, but in no case later than ninety (90) days following the submission of the Action Plan, unless a later implementation date is mutually agreed upon by the Settling Parties. Defendant shall notify LA Waterkeeper in writing when an Action Plan has been implemented.

c.   Any first Action Plan required under this Consent Decree during the Term as a result of an Exceedance of Table 1, shall require, at a minimum, one of the following BMPs, which shall be installed and begin operating by October 1st of the subsequent Reporting Year unless LA Waterkeeper extends the deadline upon Defendant's demonstration to LA Waterkeeper's reasonable satisfaction that the selected BMP cannot reasonably be completed by the deadline:

1. Capture and infiltration of storm water to fulfill the On-Site Compliance Option as specified in Attachment I of the General Permit;

2.   Capture and advanced treatment of storm water, consistent with the Design Storm standards from the General Permit (Section X.H.6);

3. Capture, store, and discharge of storm water to the sanitary sewer as necessary to fulfill the On-Site Compliance Option as specified in Attachment I of the General Permit.

d.   Regardless of the chosen BMP required pursuant to a first Action Plan triggered pursuant to paragraphs 25 and 25(c), Defendant agrees to comply with the provisions of this Consent Decree for two Wet Seasons after the applicable system is installed.

26.   Any Action Plan shall be submitted to LA Waterkeeper within thirty (30) days of the receipt of the laboratory report demonstrating the Exceedance, the

discharge of non-stormwater, or the discharge of storm water from a storm event smaller than the Design Storm, as applicable.

    a. <u>Proposed BMPs for any Action Plan:</u> In addition to the required BMP following any first Action Plan as a result of an Exceedance of Table 1, the following BMPs should generally be evaluated for inclusion in Action Plans to attain the Table 1 levels in the Facility's storm water discharges:

        i. <u>Hydrologic Controls</u>: Installation of additional berms or equivalent structural controls necessary to reduce or prevent storm water from flowing off site other than through the engineered storm water conveyance system or storm water retention or treatment facilities.

        ii. <u>Sweeping</u>: The increased/more frequent use of sweepers and manual sweeping in otherwise inaccessible areas.

        iii. <u>Treatment Systems</u>: Installing additional components or systems, or otherwise improving, the advanced storm water treatment system, or making changes to the operation and maintenance protocols for such system, to provide more effective filtration treatment of storm water prior to discharge.

        iv. <u>Evaluation of Existing BMPs</u>:  Replacing, rehabilitating, or eliminating existing BMPs, taking into account the age of the BMPs involved or employed, the engineering aspect of the application of various BMPs, and any adverse environmental impact of the BMPs.

    b. <u>Action Plan Review</u>: LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's Action Plan to provide Defendant with comments. Within fourteen (14) days of receiving LA Waterkeeper's proposed revisions to an Action Plan, Defendant shall consider each of

LA Waterkeeper's recommended revisions and accept them or justify in writing why any comment is not incorporated. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan.

c.  Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan, as set forth in paragraph 31.b.i. below.

d.  Action Plan Payments: Defendant shall pay Five Thousand Dollars ($5,000.00) each time an Action Plan is submitted to LA Waterkeeper. Payments shall be made to "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Barak Kamelgard, 360 E 2nd Street Suite 250, Los Angeles, CA 90012. Failure to submit a payment as required under this paragraph will constitute a breach of the Consent Decree.

**D.  VISUAL OBSERVATIONS**

27.  Storm Water Discharge Observations: During the Term, appropriately trained staff of Defendant shall conduct visual observations during the Facility's operating hours during every rain event. Such inspections shall comply with all requirements of Section XI.A.2 of the General Permit, and any successor thereof.

28.  Monthly Visual Observations: During the Term, appropriately trained staff of Defendant shall conduct monthly non-storm water visual observations of the Facility. Such inspections shall comply with all requirements of Section XI.A.1 of the General Permit, and any successor thereof. Such monitoring shall include outfalls, Discharge Points, outdoor industrial equipment and storage areas, outdoor industrial activities areas, BMPs, and all other potential sources of industrial pollutants. All

Discharge Points shall also be inspected for accumulation of dust, sediment, sand, grit, oily substances, oily sheens upon any standing water, and other materials associated with operations at the Facility. During the Wet Season, such inspections shall further include observations of all storm water BMPs that are used only during the Wet Season at the Facility to ensure that operational BMPs are being implemented, structural BMPs are in good condition or working order, and that BMPs have been effective in producing clean conditions at the Facility. Such inspections shall further include observation as to whether there are any non-storm water discharges from the Facility.

29.    Visual Observations Records: Defendant shall maintain observation records, including representative photographs, to document compliance with paragraphs 27 and 28. Such records shall include, but not be limited to, the persons who completed the inspection, the date of the inspection, and notes sufficient to describe the completed activity and all observations thereof, including but not limited to: (i) whether BMPs are in an adequate condition; (ii) whether any repair, replacement, or operation and maintenance is needed for any BMPs; and (iii) other conditions that have the potential to lead to pollutant loading in storm water discharges; and (iv) representative photographs of all the foregoing. Defendant shall provide LA Waterkeeper with a copy of those records within ten (10) days of receipt of a written request from LA Waterkeeper for those records.

30.    Employee Training Program: Within forty-five (45) days of the Effective Date, Defendant shall develop and implement an employee training program that meets the following requirements and ensures (1) that there is a sufficient number of employees at the Facility designated to achieve compliance with the General Permit and this Consent Decree ("Designated Employees"), and (2) that these Designated Employees are properly trained to perform the activities required by the General Permit and this Consent Decree ("Training Program"):

a. Training materials should include a Training Manual, including drawings and diagrams where appropriate, for reference and use by Defendant's personnel to ensure effective implementation of BMPs at the Facility;

b. Language. The training and training materials shall be available and offered in the language(s) in which Designated Employees are fluent. If necessary, Defendant shall provide a translator or translators at all trainings where such translation is likely to improve staff comprehension of the Training Program and improve compliance with this Consent Decree and the General Permit;

c. Training shall be provided by a Qualified Industrial Storm Water Practitioner ("QISP", as defined in Section IX.A of the 2015 Permit) familiar with the requirements of this Consent Decree and the General Permit, and shall be repeated as necessary to ensure that all Designated Employees are familiar with the requirements of this Consent Decree, the Permit, and the Facility's SWPPP. All relevant new staff shall receive this training before assuming responsibilities for implementing the SWPPP;

d. Sampling Training: Defendant shall designate an adequate number of employees necessary to collect storm water samples as required by this Consent Decree, including training to ensure samples are properly collected, stored, and submitted to a certified laboratory;

e. Visual Observation Training: Defendant shall provide training on how and when to properly conduct visual observations to Designated Employees;

f. Non-Storm Water Discharge Training: Defendant shall train all Designated Employees at the Facility on the General Permit's prohibition of non-storm water discharges, so that Designated

Employees know what non-storm water discharges are and how to detect and prevent non-storm water discharges;

   g. <u>Employees</u>: All Designated Employees at the Facility shall participate in the Training Program annually. New Designated Employees shall participate in the Training Program within thirty (30) days of their hiring date;

   h. Defendant shall maintain training records to document compliance with this paragraph and shall provide LA Waterkeeper with a copy of these records within seven (7) days of receipt of a written request;

   i. <u>Identification of Storm Water Pollution Prevention Team and Training Program Updates into SWPPP</u>: Within thirty (30) days of the effective date, Defendant shall update the SWPPP to identify the positions and persons responsible for carrying out storm water management, monitoring, sampling and SWPPP implementation.

31. <u>SWPPP Revisions</u>:

   a. <u>Initial SWPPP Revisions</u>: Defendant shall amend the Facility's SWPPP to incorporate the requirements in this Consent Decree and comply with the General Permit and submit the complete, updated SWPPP to LA Waterkeeper within thirty (30) days of the Effective Date for review and comment. The updated SWPPP shall contain, at a minimum, the following elements:

      i. A revised pollutant source assessment, including all elements required by section X.G of the General Permit as well as assessments of the potential for the Facility's storm water discharges to contain pollutants for which the Receiving Waters are 303(d) listed and/or have Total Maximum Daily Loads;

ii.  A detailed narrative description of each industrial activity with the potential to impact storm water quality occurring at the Facility as required by section X.G of the General Permit;

iii.  Descriptions of all BMPs in accordance with section X.H.4 of the General Permit, including without limitation BMPs required by this Consent Decree;

iv.  A set of site maps that comply with section X.E of the General Permit and provisions of this Consent Decree;

v.  A MIP as required by sections XI and X.I of the General Permit; and

vi.  A Training Program as described above at paragraph 30.

b.  <u>Additional SWPPP Revisions</u>:

i.  Within thirty (30) days after approval of any Action Plan by LA Waterkeeper (or resolution pursuant to Dispute Resolution), Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan and submit a complete copy to LA Waterkeeper for review and comment. Regardless of the time allocated for LA Waterkeeper review and comment, Defendant will upload the SWPPP to SMARTS in a timely manner, provided that uploading to SMARTS shall not be a justification in as to why a change requested by LA Waterkeeper is not incorporated.

ii.  Within thirty (30) days after any changes in industrial activities, sources of industrial pollutants, changes to Discharge Points, or changes to sections of the SWPPP identified in the SWPPP as requiring a SWPPP revision (including but not limited to, changes in Facility contacts or PPT members, changes or additions of BMPs, or changes in or additions of industrial activities that

impact storm water discharge), Defendant shall revise the then-current SWPPP to reflect such changes and submit a complete copy to LA Waterkeeper for review and comment. Regardless of the time allocated for LA Waterkeeper review and comment, Defendant will upload the SWPPP to SMARTS in a timely manner, provided that uploading to SMARTS shall not be a justification in as to why a change requested by LA Waterkeeper is not incorporated.

c. <u>Review of SWPPP</u>:  For any SWPPP updates pursuant to paragraphs 31(a) and 31(b), LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's SWPPP to provide Defendant with comments. Within thirty (30) days of receiving LA Waterkeeper's comments and proposed changes to the SWPPP, Defendant shall consider each of the comments and proposed changes and either accept them or justify in writing why a change is not incorporated. The Parties agree to work in good faith to resolve any disputes with respect to the SWPPP, and any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV below. Following incorporation of any proposed modification or additions into each revised SWPPP, Defendant shall upload the SWPPP to SMARTS.

### E. COMPLIANCE MONITORING AND REPORTING

32.  Every year during the Term, LA Waterkeeper may conduct one annual site inspection ("Site Inspection") for the purpose of ensuring compliance with this Consent Decree and the General Permit. In the event of a dispute regarding Defendant's compliance with this Consent Decree, and provided a Site Inspection would be relevant to resolving the Parties' dispute, the Parties agree to meet and confer regarding one additional Site Inspection at Plaintiff's request. Plaintiff shall not unreasonably request, and Defendant shall not unreasonably deny, one additional

Site Inspection per year. Any Site Inspection shall occur during normal business hours, and LA Waterkeeper will provide Defendant with at least twenty-four (24) hours' notice prior to a Site Inspection. For any Site Inspection requested to occur in wet weather, Plaintiff shall be entitled to adjust timing or reschedule during normal business hours in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather. Notice will be provided by electronic mail to the individual(s) designated below at paragraph 61. During the Wet Weather inspection, Plaintiff may request that Defendant collect a sample of industrial storm water discharge from the Facility's designated industrial discharge point(s) referenced in its SWPPP, to the extent that such discharges are occurring. Defendant shall collect the sample and provide a split sample to LA Waterkeeper. LA Waterkeeper's representative(s) may observe the split sample(s) being collected by Defendant's representative. LA Waterkeeper shall be permitted to take photographs or video recording during any Site Inspection. LA Waterkeeper agrees to provide forty-eight (48) hours' notice to Defendant in advance so that appropriate arrangements can be made with the water sampling laboratory.

33.     <u>Document Provision</u>. During the Term, Defendant shall notify and submit documents to LA Waterkeeper as follows:

a.     Defendant shall copy LA Waterkeeper on all compliance documents, monitoring and/or sampling data, written communications and/or correspondences, or any documents related to storm water quality at the Facility that are submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality;

b.     Any compliance document, inspection report, written communication and/or correspondence, or any document related to storm water quality at the Facility received by Defendant from the Regional Board, the State Board, and/or any state or local agency, county, municipality shall be sent to LA Waterkeeper within ten (10) business days of receipt by

Defendant. Defendant shall mail paper copies or email electronic copies of documents to LA Waterkeeper at the relevant notice address contained below.

34.   <u>Compliance Monitoring</u>. Defendant agrees to partially defray costs associated with Plaintiff's monitoring of Defendant's compliance with this Consent Decree during the Term by paying Six Thousand Dollars ($6,000.00) for the first year of the Term and Four Thousand Dollars ($4,000.00) per year for the remainder of the Term. In the event that there is an additional site inspection in a given year to resolve a dispute pursuant to Section IV of this Consent Decree, in which case Defendant shall reimburse LA Waterkeeper an additional  Three Thousand Dollars ($3,000) during such year (an "Additional Site Inspection Payment"). The initial Compliance Monitoring payment shall be made within thirty (30) days of the Effective Date, and each subsequent annual Compliance Monitoring payment shall be made on the applicable anniversary of the Effective Date. Any Additional Site Inspection Payments shall be made within thirty (30) days after any additional site inspection, as applicable. The payment shall be made via check, made payable to: "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Barak Kamelgard, 360 E 2nd Street Suite 250, Los Angeles, CA 90012.

35.   Failure to submit payment as required under this paragraph will constitute breach of the Consent Decree.

### F.   ENVIRONMENTAL MITIGATION, LITIGATION FEES AND COSTS, STIPULATED PENALTIES, AND INTEREST

36.   <u>Environmental Mitigation Project</u>: To fund environmental project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in watersheds tributary to the Southern California Bight, Defendant agrees to make a payment totaling Sixty Thousand Dollars ($60,000) to the Rose Foundation made within thirty (30) days of the Effective date,

payable to the Rose Foundation for Communities and the Environment and sent via overnight mail to Rose Foundation, 201 4th St APT 102, Oakland, CA 94607.

37. <u>LA Waterkeeper's Fees and Costs</u>: Defendant agrees to pay a total of Eighty Thousand Dollars ($80,000.00) to LA Waterkeeper to partially reimburse Plaintiff for their investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter within thirty (30) days of the Effective Date. The payment shall be made payable to: Aqua Terra Aeris Law Group and delivered by overnight carrier to Aqua Terra Aeris Law Group, 4030 Martin Luther King Jr. Way, Oakland, CA 94609.

38. In the event that Defendant fails to submit to LA Waterkeeper any payment or document, report or other communication required by this Consent Decree, Defendant shall pay a stipulated payment of One Hundred Dollars ($100) per week. Such stipulated payments shall be made by check payable to: Rose Foundation for Communities and the Environment, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in paragraph 36. Payment shall be via overnight mail to Rose Foundation, 201 4th St., APT 102, Oakland, CA 94607. Defendant agrees to make the stipulated payment within thirty (30) days after the resolution of the event that precipitated the stipulated payment liability.

39. <u>Interest on Late Payments</u>: Defendant shall pay interest on any payments, fees, or costs owed pursuant to this Consent Decree that are not received by the due date. The interest shall accrue starting the next business day after the payment is due and shall be computed at a rate equal to the lower of: (i) 10% per year (0.833% per month); or (ii) the maximum rate permitted by applicable law. Interest shall continue to accrue daily on any outstanding balance until Defendant is current on all payments then due under this Consent Decree. Interest on late payments shall be made by check payable to: Rose Foundation for Communities and the Environment, and such funds

shall be used for the sole purpose of funding environmentally beneficial projects, as described in paragraph 36. Payment shall be via overnight mail to Rose Foundation, 201 4th St., APT 102, Oakland, CA 94607.

## IV. **DISPUTE RESOLUTION**

40.   This Court shall retain jurisdiction over this matter for the Term for the purposes of enforcing its terms and conditions, and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

41.   Meet and Confer. Either party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other party in writing of the matter(s) in dispute and of the disputing party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) calendar days from the date of the notice.

42.   Settlement Conference. If the Parties cannot resolve the dispute within thirty (30) days of the meet and confer described in paragraph 41, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion.

43.   In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

## V. **MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE**

44.   Plaintiff's Waiver and Release of Defendant. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf

and on behalf of its officers and directors, release Defendant, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were raised in the 60-Day Notice and/or the Complaint up to and including the Effective Date of this Consent Decree.

45.   Defendant's Waiver and Release of Plaintiff. In consideration of the above, upon the Effective Date of this Consent Decree, Defendant, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Plaintiff, its officers and directors, from and waives all claims related to the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

46.   Nothing in this Consent Decree limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative body on any matter relating to Defendant's compliance at the Facility with the Stormwater Permit or the Clean Water Act occurring or arising after the Effective Date.

VI. **MISCELLANEOUS PROVISIONS**

47.   No Admission of Liability. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. The Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

48.   Counterparts. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy

and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

49. <u>Authority</u>. The undersigned representatives for Plaintiff and Defendant each certify that they are fully authorized by the party whom they represent to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

50. <u>Construction</u>. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

51. <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

52. <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

53. <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

54. <u>Choice of Law</u>. The laws of the United States shall govern this Consent Decree.

55. <u>Diligence</u>: Defendant shall diligently file and pursue all required permit applications for the structural BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

56.   <u>Effect of Consent Decree</u>: Compliance with this Consent Decree does not mean that Defendant is complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

57.   <u>Negotiated Settlement</u>. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

58.   <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

59.   <u>Assignment</u>. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendant shall notify Plaintiff within ten (10) days of any assignment.

60.   <u>Force Majeure</u>. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any party

seeking to rely upon this paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

61. <u>Correspondence</u>. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

<u>If to Plaintiff</u>:
Anthony M. Barnes
Aqua Terra Aeris Law Group LLP
4030 Martin Luther King Jr. Way
Oakland, CA 94609
amb@atalawgroup.com

<u>If to Defendant</u>:
Katherine A. Roek
Associate General Counsel
Environmental & Regulatory
ECOLAB
1 Ecolab Place, EGH/14, ST. PAUL, MN 55102
Katie.Roek@ecolab.com

Tracy J. Egoscue
Egoscue Law Group, Inc.
3834 Pine Ave
Long Beach, CA 90807
tracy@egoscuelaw.com

<u>With copies to</u>:
Los Angeles Waterkeeper
Barak Kamelgard
Benjamin Harris
360 E 2nd St Suite 250
Los Angeles, CA 90012
barak@lawaterkeeper.org
ben@lawaterkeeper.org
Phone: (310) 394-6162

<u>With copies to</u>:
Chris Puza
Plant Manager
Nalco an Ecolab Company
2111 E Dominguez St, Carson CA 90810
christopher.puza@ecolab.com

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

62.   If for any reason the DOJ should object to this Consent Decree or the District Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the DOJ or the District Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the District Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT

Dated: _____, 2023                    By: _____
                                                                            Bruce Reznik
                                                                            Executive Director
                                                                            Los Angeles Waterkeeper

Dated: _____, 2023                    By: _____
                                                                            Christopher Puza
                                                                            Plant Manager
                                                                            Nalco Company LLC

1
2
3
4
5   APPROVED AS TO FORM

6
                                        AQUA TERRA AERIS LAW GROUP
7

8

9   Dated: July 6, 2023                 By: _____
10                                            Anthony M. Barnes
                                             Attorney for Plaintiff
11                                           Los Angeles Waterkeeper

12

13                                      NALCO COMPANY LLC

14

15  Dated: _____, 2023        By: _____
16                                           Katherine A. Roek
                                             Associate General Counsel
17                                           Environmental & Regulatory
                                             Attorney for Defendant
18                                           Nalco Company LLC
19

20

21

22

23                                      EGOSCUE LAW GROUP, INC.

24

25  Dated: _____, 2023        By: _____
26                                           Tracy J. Egoscue
                                             Attorney for Defendant
27                                           Nalco Company LLC

28

1
2
3
4          Upon approval and entry of this Consent Decree by the Court, this Consent
5   Decree shall constitute a final judgment between the Plaintiff and Defendant.
6          **IT IS SO ORDERED.**
7
8
9   Dated:  August 23, 2023
10
11                                                  John A. Kronstadt
                                                    United States District Judge
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28